ROSS MEEHAN FOUNDRIES *v.* NASHVILLE BRIDGE CO.

(*Nashville.* December Term, 1923.)

SALES. Buyer accepting goods not according to contract, with knowledge of seller's price, liable therefor.

Buyer accepting and using castings delivered in finished condition, though ordered in rough, with knowledge of seller's price for finished castings, impliedly agreed to pay such sum and was liable therefor, though castings were not reasonably worth that amount.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JNO. R. AUST, Chancellor.

ALLISON, LYNCH & PHILLIPS, for appellant.

ROBERTS & COOPER, for appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Suit to recover $4,004.67, balance due on account for certain castings made and finished under a written order.

The chancellor entered a decree in favor of complainant for the full amount sued for.

The defendant has appealed, and has assigned errors.

On May 11, 1920, defendant wrote complainant as follows:

"We would thank you to quote us price and best delivery on steel and iron castings as shown on our blueprint sheet inclosed herewith:

"Steel Castings.

4 shoes (2 right and 2 left).

76 miter brackets.

36 sections of rack.

4 gate fastenings.

4 seal B locks.

"Iron Castings.

16 stanchion sockets.

"In making quotation please quote pound price. Thanking you for a prompt reply, we are, Yours truly."

In reply complainant, on May 13, 1920, quoted prices on castings in the rough, and stated that they could be made in three weeks after receipt of order. It then added:

"If you wish us to do the machine work, we quote prices as follows:

Shoes at the rate of $131.25 each.

Miter brackets at the rate of $32.00 each.

Section rack at the rate of $10.00 each.

Gate fastenings at the rate of $10.00 each.

Stanchion sockets at the rate of $2.00 each."

"If the finishing is done in our shop it will require 60 days' additional time."

The machine work consisted of planing and polishing the surfaces and drilling the holes, all of which was provided by the blueprint accompanying the inquiry.

At this point it may be proper to state that the defendant now contends that it instructed the complainant to do the machine work only on the 4 shoes, and that on the miter brackets and other castings it contemplated doing the machine work at its own plant.

On the other hand, the complainant construed the contract to mean that it was to do the machine work on all of the castings.

On May 19, 1920, defendant wrote complainant as follows:

"Inclosed herewith is our purchase order No. 2696, covering steel and iron castings for lock gates, Lock E. Cumberland river. You will note that these castings are to be in accordance with drawings from the U. S. Engineers' office, Nashville, Tenn., as shown on drawings No. C-5, sheet No. 22.

"The patterns for these castings are supplied by the government and are now in our works. These will be crated and forwarded to you promptly.

"We note that you will require three weeks to complete the castings, and we note further in your quotation you state that it will require sixty days to do the machine work. Although we desire you to do the machine work on the shoe castings including machining and fitting the bronze bushings therein, we must have these castings within sixty days. It is not possible to secure this delivery and include therein this machining on the shoes only? Advise us on this point."

The order accompanying same was as follows:
"To Ross Meehan Foundries, Chattanooga, Tenn.:

"Delivery to us, track location No. 138, Nashville, Tenn., via N., C. & St. L.:

| | | |
|---|---|---|
| 4 shoes (2 right and 2 left) | @ 10.2¢ | lb. (cast steel). |
| 76 miter brackets | @ 12.3¢ | lb. (cast steel). |
| 36 sections of rack | @ 28.80¢ | lb. (cast steel). |
| 4 gate fastenings | @ 28.80¢ | lb. (cast steel). |
| 4 seal blocks | @ 28.80¢ | lb. (cast steel). |
| 16 stanchion sockets | @ 5.00¢ | lb. (cast steel). |

Ross Meehan Foundries v. Nashville Bridge Co.

"In accordance with drawings C–3, sheet 22, showing details of lock gates, Cumberland Rubt. U. S. Engineer's Office, Nashville, Tenn.

"Cast steel in conformity to class B castings American Society for testing material placed 1916.

"Patterns to be furnished by us.

> "Nashville Bridge Company,
> "By L. C. Anderson."

On May 21, 1920, complainant acknowledged the order in the following letter:

"We have your favor of the 19th inst., file C-3974, inclosing order No. 2696 for steel and gray iron castings as per our quotation of May 13th. We thank you very much for this order and we will endeavor to anticipate the delivery promised in our quotation.

"Please bear in mind that the delivery was based upon the time required to do this work after receipt of the patterns, which have not yet reached us."

A confirmation of the sale upon one of its regular blanks was mailed to defendant on June 1, 1920; the material part of same being as follows:

| Date 5/19/20. | Ross Meehan Foundries | Our order |
| "Your order | 6/1/20. | No. Z-7530 |
| No. 2696 | For Nashville Bridge | Promised. |
| Requisition No. | Co., | |
| | Nashville, Tenn. | |

| pieces | Pattern No. | Description |
|--------|-------------|-------------|
| 4 | | Shoes 2 L. & 2 R. Price 10.2 |
| | | Mach. work 131. 25 Ea. mach. wk. |
| 76 | | Miter brackets price 12.3 32.—Ea. |
| 36 | | Rack sections price 12.25 mach. work 10.00 Ea. |
| 4 | | Gate fastenings price 12.80 mach. work 10.00 Ea. |
| 4 | | Seal blocks price 28.80 mach. work 20.00 |

> "In accordance Dwg. C-S
> Necessary mach. work
> Shipment promised in 81 days."

Mr. Anderson, testifying for the defendant, said that he did not remember seeing this confirmation, but that, if he did, it made no impression on his mind.

In our opinion, the preponderance of the evidence shows that this confirmation was received by defendant.

The miter brackets, planed, polished, and with the holes drilled, as provided by the blueprint, were shipped and received by defendant during the months of June, July, August, September, and the last shipment was made October 1st.

On the first day of each month an itemized statement of the castings shipped during the preceding month was mailed to the defendant. These statements showed a charge of $32 for machine work on each bracket.

On June 25, 1920, complainant shipped to defendant, and mailed invoice for same, 35 rack section castings complete, inclusive of machine work, amounting to $667.09, and this invoice was paid in full on September 20th without question.

The contention now relied upon by defendant was made for the first time in a letter dated October 13th, and after all of the castings had been shipped and received by the defendant.

In the letter of May 11th defendant asked for the best price on castings and that it quote pound price. Nothing was said about finishing the castings.

In reply complainant quoted pound price, and then stated what the additional cost would be if buyer desired it to finish the castings.

Defendant then sent an order for the castings in the rough, but stated in a letter accompanying same that it would like for it to finish the shoes, provided they could

be molded and finished within 60 days.   The language used was this:

"We note that you will require three weeks to complete the castings, and we note further in your quotation you state that it will require sixty days to do the machine work.   Although we desire you to do the machine work on the shoe castings including machining and fitting the bronze bushings therein, we must have these castings within sixty days.   It is not possible to secure this delivery and include therein this machining on the shoes only?   Advise us on this point."

This language is plain and unambiguous and inquired if defendant could not secure the delivery of the order within 60 days, including machine work on shoes only.

We cannot understand how complainant misread this order, but it evidently did, and interpreted the contract to mean that it was to finish all of the castings.

The first castings were shipped in June in a finished condition, and were received and paid for.   Had the defendant then notified complainant of the mistake it could have been corrected as to the miter brackets, but defendant remained silent, and permitted complainant to manufacture and deliver all of the castings in a finished condition and received and used same.

In these circumstances what are the rights of the parties?

Counsel for defendants, in effect, concede that, having received and used the castings, it would have to pay for same, and this seems to be covered by subsection 3 of section 44 of the Uniform Sales Act (Pub. Laws 1919, chapter 118), which provides as follows:

"Where the seller delivers to the buyer the goods he

contracted to sell mixed with goods of a different description not included in the contract the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole."

The defendant, however, accepted the whole.

But defendant contends that it is only liable for the reasonable cost of doing the machine work on the miter brackets and not for the price asked by the complainant, which it alleges is unreasonable.

For the complaint it is shown that the $32 charged was a reasonable price when the method employed in finishing said brackets is considered. On the other hand, the defendant contends that the machine work could have been done by a different method at a cost of not exceeding $10 each.

Whether the machine work could have been done satisfactorily, in the manner stated by the defendant's witnesses, is a question of some doubt, and one not necessary to determine in the view we take of the cause.

The pertinent part of section 9 of the Uniform Sales Act is as follows:

"(1) The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties. . . .

"(4) Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price. What is a reasonable price is a question of fact dependent on the circumstances of each particular case."

The price was not fixed by the contract because the contract did not provide for finished brackets.

Neither was there any agreement as to any other manner by which the price was to be fixed.

Was the price determined by the course of dealing between the parties?

The complainant priced the brackets in the rough, also in a finished condition.

The defendant ordered the brackets in the rough, but, through mistake, complainant delivered them in a finished condition and the defendant accepted and used them. Defendant had the right to reject them and to demand delivery of the goods ordered. By accepting and using them, with knowledge that complainant's price was $32 each, it impliedly agreed to pay that sum. To illustrate: A. quotes B. a price of $300 for a two-caret diamond in the rough or $500, cut and polished. B. orders the diamond in the rough. By mistake A. ships the other, and B. accepts same and uses it. Again, a dealer in second-hand automobiles quotes B. a Dodge for $1,000 and a Cadillac for $2,000. B. orders the Dodge. By mistake A. ships the Cadillac, and B., being pleased with it, accepts and begins using it. When B. calls on him to pay he refuses upon the ground that the machine is only reasonably worth $1,500. By accepting the machine, with knowledge of the price asked, he impliedly agreed to pay that price. It is fixed by the course of dealing between the parties.

A dealer has a right to set a price on his wares, and when a purchaser, with knowledge of such price, takes and appropriates the article, he must pay that price. Otherwise, a party could profit by the mistake of another when he had suffered no loss. To permit this would be inequitable and unjust.

We find no error in the decree of the chancellor, and it will be affirmed.